# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. SHAWN GANT, Defendant. | No. 10-CR-2027-LRR **SENTENCING MEMORANDUM** |

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Shawn Gant.

## II. RELEVANT PROCEDURAL HISTORY

On July 13, 2010, a federal grand jury returned a two-count Indictment (docket no. 2) against Defendant. Counts 1 and 2 each charged Defendant with making a telephone threat to damage or destroy a building by means of fire or explosive, in violation of 18 U.S.C. § 844(e). On October 4, 2010, Defendant pled guilty to Count 1 of the Indictment. On October 18, 2010, the court entered an Order (docket no. 24) accepting Defendant's guilty plea.

On November 23, 2010, the United States Probation Office ("USPO") released a draft copy (docket no. 25) of Defendant's Presentence Investigation Report ("PSIR"). Both parties lodged objections. On December 21, 2010, USPO released a final copy of the PSIR (docket no. 31). On February 1, 2011, Defendant filed a sentencing memorandum (docket no. 35). On that same date, the government filed a sentencing memorandum ("Gov. Sent. Mem") (docket no. 36). In its memorandum, the government requested an upward departure or upward variance from the calculated advisory Sentencing Guidelines range.

On March 21, 2011, the court held a sentencing hearing ("Hearing"). Assistant United States Attorney Sean Berry represented the government. Assistant Federal Public Defender Jill Johnston represented Defendant, who was personally present. At the Hearing, the parties indicated that they had no objections to the PSIR's calculation of the advisory Guidelines sentencing range. The only issues argued at the hearing was whether the court should depart or vary upward from that range. The court advised the parties that it would take these issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

### III. SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)); *see, e.g.*, *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); *see also United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en

banc) ("'[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

## IV. EVIDENTIARY RULES

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR, as well as the testimony and other evidence the parties introduced at trial and at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant's offenses of conviction. In calculating Defendant's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g.*, *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005). The sentencing judge is afforded great discretion in determining the credibility of witnesses and making findings of fact. *United States v. Bridges*, 569 F.3d 374, 378 (8th Cir. 2009).

## V. DISPOSITION

The government argues that an upward departure from the advisory Guidelines range is appropriate due to Defendant's criminal past. First, the government argues that a significant upward departure from Criminal History Category VI is warranted because "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history [and] the likelihood that the defendant will commit other crimes." Gov. Sent. Mem. at 4 (quoting USSG §4A1.3). Second, the government urges the court to depart pursuant to USSG §5K2.2 to reflect the seriousness of the offense conduct underlying a dismissed charge. The government also argues a variance from the advisory Guidelines is warranted based on Defendant's history and characteristics and the need to protect the public from further crimes of Defendant. The court will discuss each basis for departure and then turn its attention to the variance arguments.

### A. Departures

#### 1. Departure under USSG §4A1.3

The PSIR thoroughly details Defendant's violent criminal history, including arsons, threats and assaults. Alarmingly, Defendant's criminal history shows escalating violent behavior which the court predicts will continue. Departures from the advisory Guidelines range are contemplated in cases where the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guideline that should result in a sentence different from that described." 18 U.S.C. § 3553(a). The government has the burden to prove that the circumstances of the instant case warrant an upward departure on these grounds.

In 2002, Defendant was convicted of Arson in the Second Degree for starting a fire at the APAC building in Decorah, Iowa, where he was a janitor. He was also convicted

4

of Arson in the First Degree for starting a fire in an apartment building owned by another person. It is undisputed that during the investigation of these two fires, Defendant told law enforcement he had started several other fires. The ones he could remember were the torching of two of his cars, lighting a mobile home on fire and lighting a beanbag chair on fire in an apartment. Defendant does not deny making these statements to law enforcement, but now claims he actually did not set the fires to his cars, the mobile home and in the apartment. While on probation for the 2002 arson convictions, Defendant was charged and convicted of Reckless Use of Fire arising from setting a fire at his apartment building, resulting in injury to himself and another person.

Significantly, the government has detailed other fires with which Defendant had an association in mid-1990's. Defendant was either present at these fires or they occurred at properties to which Defendant had a connection. The sheer number of fires with which Defendant was associated in that time period argue against coincidence. The totality of Defendant's uncharged criminal conduct demonstrates Defendant's criminal history category substantially understates the seriousness of Defendant's criminal conduct and predicts recidivism. USSG §4A1.3.

In subsequent years, Defendant was convicted of domestic abuse assaults and operating while intoxicated. These crimes obviously pose a threat of serious injury or death to others. The instant offense involves threats to cause physical injury or death to his former girlfriend's new boyfriend by setting a fire or explosion. The courts finds these threats to be credible given Defendant's history.

Given Defendant's prior violent history, some but not all of which was scored under the advisory Guidelines, the Defendant's unscored criminal history, the Defendant's history of substance abuse and mental health issues and Defendant's apparent proclivity to set fires, the court finds Criminal History Category VI substantially under-represents

the seriousness of Defendant's criminal past and the likelihood he will commit other crimes in the future upon his release from custody.

### 2. *Departure under USSG §5K2.21*

Pursuant to USSG §5K2.21, the court has the discretion to depart upward to reflect the seriousness of the offense based on conduct underlying a charge that was dismissed as part of a plea agreement, provided that the conduct did not enter into the determination of the applicable advisory Guidelines range. *See United States v. Neuzil*, 405 F. App'x. 80 (8th Cir. 2010).

In this case, Defendant was charged in Count 2 of the Indictment with using an instrument of interstate commerce (a telephone) to "willfully make[] [a] threat . . . concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate an individual or unlawfully to damage or destroy any . . . real or personal property by means of fire[.]" 18 U.S.C. § 844(e). Defendant made this threat eight days after the threat charged in the count of conviction. Defendant did not deny telephoning the victims' workplace on June 17, 2010 after calling the restaurant several times per day. He called the restaurant looking for the victim, upon learning she was there, stated "I'm done fucking around. I'll just blow it up." PSIR at ¶ 37. The conduct giving rise to the threat was not contested and therefore is appropriately relied on by the court at sentencing. *United States v. Oehlenschlager*, 76 F.3d 227, 230 (8th Cir. 1996) ("[W]hen a defendant has admitted the facts alleged in the PSIR, the district court is entitled to rely on them."). This threat was not considered in computing the advisory Guidelines sentencing range for Count 1.

The court finds the additional criminal behavior not part of relevant conduct for the Guidelines computation is an appropriate basis for an upward departure and the court will depart upward based in part on USSG §5K2.21.

### 3. *Departure calculation*

The advisory Guidelines range of imprisonment for Defendant, absent any departure, is 33-41 months based on an Offense Level 13 and Criminal History Category VI. To calculate a departure where the Criminal History Category is VI—the highest criminal history category—the court "should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." *United States v. Mireles*, 617 F.3d 1009, 1013 (8th Cir 2010) (quoting USSG §4A1.3(a)(4)(B)).

For purposes of the departures pursuant to USSG §4A1.3(a)(4)(B) and 5K2.21, the court finds Defendant's history of criminal conduct and likelihood of recidivism as well as the seriousness of offense conduct and the criminal conduct not taken into account in computing the Guidelines range warrants a sentence of 120 months, which would be comparable to a sentence imposed at Offense Level 24 Criminal History Category VI.

## B. Variance

Post-*Booker*, the court must determine whether a non-Guidelines sentence is appropriate after determining the Guidelines range and any permissible departures within the Guidelines structure. *United States v. Myers*, 503 F.3d 676, 684 (8th Cir. 2007). The court has a "responsibility to select a sentence that [is] 'sufficient, but not greater than necessary' to comply with the statutory sentencing purposes." *United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)); *see also United States v. Butler*, 594 F.3d 955, 967 (8th Cir. 2010) (same). "[A] district court's job is not to impose a reasonable sentence, but rather to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). *United States v. Lytle*, 336 F. App'x 587, 588 (8th Cir. 2009) (citations and internal quotation marks omitted).

In the event the court's decision to depart from the advisory Guidelines range is found to be in error by a reviewing court, this court would vary upward from the advisory

7

Guidelines range to a sentence of 120 months after carefully considering all the statutory factors at 18 U.S.C. § 3553(a). As discussed fully above, Defendant's history and characteristics warrant an upward variance. In addition, an upward variance is necessary to protect the public from further crimes of the Defendant.

Defendant is a violent person who has an apparent proclivity to set fires. His excessive use of alcohol and the past association of use of alcohol with violent behavior make him a menace. Set fires account for the injury or death of innocent persons, including firefighters, every year. Set fires result in considerable financial loss to property owners and their insurers. Thus far, Defendant's set fires have not taken the life of anyone. To date more lenient treatment of Defendant has had little to no deterrent effect on him. Defendant has ignored a counselor's recommendation that he obtain an assessment to determine if he is appropriately diagnosed as a pyromaniac and to seek treatment. Defendant's escalating behavior, which now includes threats to kill others, persuades the court that a sentence at the statutory maximum is the sentence which is sufficient but not greater than necessary to achieve the goals of sentencing.

## IV. CONCLUSION

In light of the foregoing, the court finds the appropriate sentence is **120 months imprisonment**, followed by a **3 year term of supervised release.** Defendant has an undischarged term of imprisonment for convictions of the state crimes of public intoxication third offense and domestic abuse assault in the Iowa District Court for Fayette County, docket number AGCR06295. Pursuant to USSG §5G1.3 and the relevant factors at 18 U.S. C. § 3553(a), the court finds the sentence imposed on the instant offense should run consecutively to the undischarged term of imprisonment in Fayette County. When the court reconvenes the Hearing on April 28, 2011, it shall sentence Defendant in a manner consistent with the instant Sentencing Memorandum.

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA